243 P.3d 343 (2010)
STATE of Kansas, Appellee,
v.
Jeffery D. NELSON, Appellant.
No. 101,064.
Supreme Court of Kansas.
November 19, 2010.
*344 Meryl Carver-Allmond, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.
*345 Ty Kaufman, Special Prosecutor, argued the cause, and Steve Six, Attorney General, was with him on the brief for appellee.
The opinion of the court was delivered by BILES, J.:
Jeffery Dale Nelson appeals his convictions of premeditated first-degree murder, burglary, and three counts of forgery. These crimes arose from the death of Nelson's stepfather, Stanley Swartz, who Nelson admitted striking repeatedly in the head with a baseball bat. Nelson claims four errors: (1) The district court failed to give an imperfect self-defense jury instruction; (2) the instructions on first-degree murder were improper because they lessened the State's burden of proof; (3) the district court failed to comply with K.S.A. 60-455 in admitting prior crimes evidence; and (4) the district court used the wrong standard to determine aggravating circumstances when sentencing Nelson to a hard 50 prison term for his first-degree murder conviction. As explained below, we affirm his convictions. We reverse and remand with directions for resentencing on the first-degree murder conviction.

FACTUAL AND PROCEDURAL BACKGROUND
The relevant events occurred over a 3-day time span. On August 24, 2007, Nelson went to the house of his stepfather Swartz, just as Swartz was getting ready to leave for work. Swartz indicated Nelson was not welcome and waited for Nelson to leave before going to work. Nelson returned while Swartz was at work and broke into the garage. Nelson used a ladder to crawl through an attic space connecting the garage to the house because the garage did not have direct access to the house. Once inside the attic space, the ceiling buckled and Nelson fell through, creating a hole. When Swartz returned home after work, Nelson was gone. Swartz reported the break-in to police and said his checkbook was missing.
At 9:38 p.m. that same day, Nelson used an ATM to deposit a $5,000 forged check from Swartz' account. Nelson then picked up his friend, Keith Hewitt. They drove to Wal-Mart, and Nelson bought a baseball bat. As they were leaving the parking lot, Nelson asked Hewitt if he would help him beat up Swartz. Hewitt testified at trial that he talked Nelson out of this. The two then went to a club. Nelson took Hewitt home at 2 a.m., but Nelson returned at 3 a.m. and offered Hewitt $500 to help him "take care of" Swartz. Hewitt refused.
The next day, April 25, 2007, Nelson and Swartz had a chance encounter at Wal-Mart that became heated, but not physical. Sometime later that day Nelson deposited a $100 forged check from Swartz' account into his friend Misty Sauder's account. At around 10 p.m. Nelson asked Amber Moore, a girl he was dating, if she wanted to watch a movie. Moore picked Nelson up at his grandparents' house; he asked her if she would think poorly of him if he beat someone up; and then he asked her to drive him by Swartz' employer to see if his truck was in the parking lot. It was. Nelson then asked Moore to drive him back to his grandparents' house where he retrieved the bat. He told Moore he needed the bat for protection because he was going to beat up Swartz.
Moore and Nelson drove by Swartz' workplace again to make sure Swartz' truck was still there, and then Moore dropped Nelson off at Swartz' house. He told Moore to tell him when Swartz was driving home. Swartz returned home around 11 p.m. Moore believed Nelson was hiding in the bushes. She drove around until 1 a.m., when she told Nelson she was going home. She testified Nelson told her he "could not do it," and they went back to Moore's house. At around 2:30 a.m., Nelson borrowed Moore's car, took the baseball bat, and said he was returning to Swartz' home.
Nelson disputes what happened next. The State contends Nelson entered the home, discovered Swartz sleeping in his bed, and hit him on the back of the head while he slept. The coroner testified Swartz' death was caused by a blunt force trauma to the head, and there were no defensive wounds. A detective testified there was no evidence of a struggle in the home. Nelson's defense theory was that Swartz let him into his house, they fought, Nelson tried to leave, and Swartz pulled him back into a fight. Finally, Nelson grabbed the bat, Swartz reached for *346 it, and Nelson hit him with it. This defense theory is based on varying statements Nelson gave the police. Nelson did not testify at trial.
Initially, Nelson told a detective he got into a fight with Swartz between 11:30 and 11:45 p.m. on April 25. He said they fought over the bat and he hit Swartz with it. He said Swartz was fine when he left. Nelson later added greater and sometimes conflicting details about the physical altercation. This portion of the interview is more difficult to follow, but begins with Nelson saying that he went into a room in Swartz' house and found the bat. Swartz was standing in the room's doorway. Nelson chopped at Swartz with the bat, and Swartz backed into his bedroom. Swartz antagonized Nelson by saying he had better hit him hard, and Nelson told Swartz not to give him an excuse. Nelson then approached Swartz, and Swartz reached for the bat, eventually catching it. Nelson pushed Swartz, and he "finally" hit Swartz several times with the bat. He said Swartz ended up on the bed, lying on his back and side. Nelson told the detective he went to Swartz' house to "fucking end the animosity and all the bullshit and all the shit [Swartz] was doing."
Later in the same interview, after additional prodding from the detective, Nelson said he was going to tell the truth about what happened. Nelson admitted he brought the bat with him and did not find it in a room in Swartz' house. At some point, Nelson told a detective it was kind of hard to walk around the corner, look in the bathroom, and close the door while holding the bat without it being obvious. Then Nelson said Swartz asked if he was hiding something, and Nelson tried to "play it off like I wasn't doing anything." Nelson grabbed the door handle and pulled it. Swartz pushed him twice and slapped him on the head. Then Nelson said he pushed him back, pulled out the bat, and hit him. Nelson continually stated there was no blood when he left.
Moore testified at trial that Nelson returned to her house around 6:30 a.m. that morning, April 26. She said Nelson was pale and told her he thought he killed Swartz. Later that day, Swartz was discovered on his couch by a coworker when Swartz did not show up for work. Swartz was alive but unresponsive. There were pools of blood on Swartz' bed, pillow, and in the master bedroom; blood was found going from the bedroom, down the hallway, and in the bathroom; and there were sheets that trailed blood through the house to the couch.
Also that day, Nelson deposited a $400 forged check from Swartz' account. Nelson then dropped off an apartment rental application and test drove a BMW at a dealership. Nelson told Moore he was going to sell Swartz' vehicles for a down payment. While Nelson was occupied with the car, Moore received a phone call that Swartz had been taken to the hospital, and everyone suspected Nelson beat him. Moore and Nelson left the dealership. Moore testified that she and Nelson retrieved the clothes Nelson was wearing at the time he hit Swartz with the bat, got the bat out of a dumpster where Nelson had stashed it, drove to the country, and discarded the items. Moore later led police back to retrieve these items.
On May 19, 2007, Swartz died from complications arising from the head injuries. Nelson was charged with premeditated first-degree murder in case No. 07CR86. He also was charged with burglary and three counts of forgery for the checks drawn on Swartz' account in the amounts of $5,000, $100, and $400 in case No. 07CR125. The cases were consolidated for trial.
Nelson was convicted of all offenses. He was sentenced to life in prison with a mandatory minimum of 50 years (hard 50) under K.S.A. 21-4635 for the murder conviction. The district court found three aggravating circumstances under K.S.A. 21-4636(e), (f), and (h) justified this sentence: (1) The defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution; (2) the defendant committed the crime in an especially heinous, atrocious, or cruel manner; and (3) the victim was killed while engaging in, or because of, the victim's prospective performance of the victim's duties as a witness in a criminal proceeding. The burglary and forgery sentences were ordered to run consecutive to the murder sentence, but concurrent with each other, for an additional *347 term of 32 months' imprisonment. Nelson filed a timely notice of appeal. Jurisdiction is proper under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

ISSUE ONE: IMPERFECT SELF-DEFENSE INSTRUCTION
At trial, Nelson requested instructions on self-defense and imperfect self-defense as alternate means of voluntary manslaughter. The district court reluctantly granted the self-defense instruction, but the court noted it was a close call and wanted to err, if at all, on the defendant's side. It denied the imperfect self-defense instruction, holding the evidence did not support the instruction.
Nelson argues he was entitled to the imperfect self-defense instruction because a reasonable jury could have concluded Nelson and Swartz engaged in a fist fight and Nelson believed it was necessary to use the baseball bat, but the jury could have concluded this belief was unreasonable. Nelson contends the district court's decision to issue the self-defense instruction supports this conclusion. The State argues the district court correctly ruled the evidence did not support an instruction on imperfect self-defense. In the alternative, the State argues any error was not reversible because the jury convicted Nelson of first-degree murder and, under the "skip rule," the failure to issue a lesser instruction was not reversible error.
District courts have a duty to issue instructions on any lesser included offense established by the evidence, even if the evidence is weak or inconclusive. See K.S.A. 22-3414(3), which requires instructions "where there is some evidence which would reasonably justify a conviction of some lesser included crime...." When reviewing the district court's refusal to issue an instruction, this court views the evidence in a light most favorable to the party requesting the instruction. State v. Moore, 287 Kan. 121, 130, 194 P.3d 18 (2008).
Nelson was charged with first degree murder under K.S.A. 21-3401(a), which prohibits the intentional and premeditated killing of a human being. "Voluntary manslaughter is the intentional killing of a human being committed... (b) upon an unreasonable but honest belief that circumstances existed that justified deadly force under K.S.A. 21-3211, 21-3212 or 21-3213 and amendments thereto." K.S.A. 21-3403(b).
Of those statutes listed in the definition of voluntary manslaughter, only K.S.A. 21-3211 could be applicable under the facts in this case. It states: "(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such force is necessary to defend such person ... against such other's imminent use of unlawful force."
Under this statutory scheme, imperfect self-defense is a lesser degree of homicide, not a defense to criminal liability. Moore, 287 Kan. at 131, 194 P.3d 18. To justify an imperfect self-defense instruction, the evidence would need to show Nelson had an honest belief that deadly force was necessary to defend himself, but the belief was objectively unreasonable. Nelson did not testify, but he argues the evidence establishes this, citing the verbal altercation occurring at Wal-Mart earlier that day. Nelson also recites portions of his police interview in which he accused Swartz of delivering the initial push and preventing Nelson from leaving Swartz' home. Finally, Nelson relies upon the district court's decision to issue the self-defense instruction as support for his argument that the record supports the imperfect self-defense instruction.
But the evidence does not establish an honest belief that deadly force was justified. Nelson clearly did not fear for his life based upon the verbal altercation at Wal-Mart earlier that day because Nelson went to Swartz' house several hours later. He was the aggressor. And even accepting as true Nelson's statements that Swartz was the aggressor once Nelson was in the home, there is no evidence Nelson had an honest belief deadly force was necessary given the type of physical altercation Nelson described. Viewed in a light most favorable to Nelson, the evidence was that Swartz and Nelson got into a physical altercation and Swartz pushed, hit, and brought his heel down on Nelson's head during this fight. And under any version of *348 Nelson's story, the evidence shows Nelson introduced the bat into the fightNelson "chopped" at Swartz with the bat while Swartz tried to get the bat from him. Nelson told the detective:
"I walked up ... on him, put my hand out..., [and] he reached for the bat.... `And then [Swartz] lunged for it and caught the end of the bat. I had it about half way. I didn't have a really good grip on it but I had a better grip than [Swartz] did and I was trying to turn it and that's when I kept pushing him like this' ... with [my] left hand."
Under these facts, a reasonable jury could not have concluded Nelson had an honest belief that Swartz was threatening imminent use of unlawful force justifying Nelson to employ deadly force. The district court's decision to issue the self-defense instruction was suspect under these facts also, but it is not relevant to whether the facts support imperfect self-defense. For these reasons, we find Nelson was not entitled to an imperfect self-defense instruction. Given this finding, we need not reach the State's alternative argument, i.e., that the "skip rule" should apply to excuse any error in refusing an imperfect self-defense instruction. See Moore, 287 Kan. at 133, 194 P.3d 18.

ISSUE TWO: THE FIRST-DEGREE MURDER INSTRUCTIONS
The district court issued three instructions related to first-degree murder: (1) PIK Crim.3d 56.01, which contained the elements of first-degree murder; (2) PIK Crim.3d 56.04, which as issued contained the definitions of the terms "premeditation," "intentionally," and "heat of passion"; and (3) PIK Crim.3d 54.01, which allows a jury to infer that a defendant intends the consequences of his or her voluntary acts.
As orally issued to the jury, the PIK Crim.3d 54.01 based instruction stated:
"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with the other evidence in the case. You must [sic] accept or reject it in determining whether the State has met it's burden to prove the required criminal intent of the defendant. The burden never shifts to the defendant."
We note parenthetically that the PIK Crim.3d 54.01 instruction and the written instruction actually submitted to the jury state: "You may accept or reject [the inference]...." (Emphasis added.) Nelson makes no claim this variation was error and actually refers to the PIK Crim.3d 54.01 language in making his arguments.
But Nelson does argue PIK Crim.3d 54.01 impermissibly lessened the State's burden to prove the intent and premeditation elements. Specifically, he argues the instruction "tells the jury to infer that Mr. Nelson intended to kill Mr. Swartz simply because he committed an act that led to his death." Nelson concedes PIK Crim.3d 56.01 and PIK Crim.3d 56.04 correctly instructed the jury regarding whether Nelson intended to kill Swartz willfully, purposely, and not accidentally. He also admits PIK Crim.3d 54.01 has been found constitutional but argues this instruction impermissibly alters the correct instructions. Similar arguments were made in State v. Ellmaker, 289 Kan. 1132, 1138-42, 221 P.3d 1105(2009), and this court held they lack merit. 289 Kan. at 1142, 221 P.3d 1105.

Standard of Review
Nelson objected at trial to PIK Crim.3d 54.01, arguing intent already was defined in the homicide definitions. He did not argue the instruction affected the premeditation element. As such, these arguments are reviewed under different standards. When a defendant objects to an instruction at trial, appellate courts examine the instruction to determine if it properly and fairly states the law as applied to the case and could not have reasonably misled the jury. Nelson's intent argument is reviewed under this standard. But Nelson did not challenge this instruction's impact on premeditation at trial. A clearly erroneous standard is applied when the trial objection to a jury instruction differs from the argument presented on appeal. See K.S.A. 22-3414(3). To reverse under the clearly erroneous standard, the appellate court must be firmly convinced the jury *349 would have rendered a different verdict absent the error. Ellmaker, 289 Kan. at 1139, 221 P.3d 1105. But under either standard, appellate courts consider the instructions as a whole and will not focus on only one instruction. State v. Scott, 286 Kan. 54, 75, 183 P.3d 801 (2008); see State v. Dixon, 289 Kan. 46, 67, 209 P.3d 675 (2009).

Analysis
The defendant in Ellmaker presented similar arguments based upon similar instructions. In Ellmaker this court did not reach the substance of the intent argument because it contradicted the defendant's trial arguments and his requested jury instructions undercut it. 289 Kan. at 1140, 221 P.3d 1105. But the Ellmaker court did hold that PIK Crim.3d 54.01 did not impermissibly lessen the burden to prove premeditation. 289 Kan. at 1142, 221 P.3d 1105. The court's analysis presented two reasons to uphold the instruction, and the second justification also applies to Nelson's intent argument.
By its own language, the inference instruction only pertains to the intent element. It states the jury may infer Nelson intended the usual consequences of his actions. Since this instruction has no bearing on the premeditation element and the jury instructions clearly advised the jury that intent and premeditation were separate elements, this court held in Ellmaker that the instruction did not lessen the State's burden to prove premeditation. 289 Kan. at 1143, 221 P.3d 1105.
The instructions issued in Nelson's case demonstrate the elements of first-degree murder are separate and that the State bears the burden of proof. First-degree murder is defined in PIK Crim.3d 56.01, and Instruction No. 2 stated:
"The defendant is charged with the crime of murder in the first degree. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
"1. That the defendant intentionally killed Stanley Swartz;
"2. That such killing was done with premeditation.
"3. That this act occurred on or about the 26th day of April 2007, in McPherson County, Kansas, which act ultimately lead to the death of Stanley Schwartz on May 19, 2007, in Sedgwick County, Kansas."
Instruction No. 8, which followed PIK Crim.3d 56.04, clearly presented distinct definitions for intent and premeditation. It defined intent as "[i]ntentionally means conduct that is purposeful and willful and not accidental. Intentional includes the terms `knowing,' `willful,' `purposeful,' and `on purpose.'" It defined premeditation as:
"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous intentional act of taking another's life."
PIK Crim.3d 52.02 informed the jury it was the State's burden to prove every element, stating: "If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant not guilty." Nearly identical instructions supported the Ellmaker court's holding that the permissible inference instruction is not related to the premeditation element.
In addition, the Ellmaker court provided another reason for Nelson's contentions to fail, which as easily pertains to Nelson's intent argument. We held in Ellmaker that the inference of intent instruction, i.e., PIK Crim.3d 54.01, is an evidentiary rule that does not pertain to the State's burden of proof. 289 Kan. at 1143, 221 P.3d 1105. We went on to cite a number of cases in which this court found an inference does not alter the burden of proof. See 289 Kan. at 1143-44, 221 P.3d 1105. The Ellmaker court concluded: "This repeated rejection of Ellmaker's argument reaffirms the propriety of the instructions in this case." 289 Kan. at 1144, 221 P.3d 1105. The same analysis applied to Nelson's case demonstrates the inference of intent instruction was not improper, taken in context with the other instructions, and did *350 not mislead the jury when the instructions are considered as a whole.

ISSUE THREE: ADMISSION OF PRIOR CRIMES EVIDENCE
Nelson does not dispute he forged stolen checks from Swartz or that he entered Swartz' house without permission. But Nelson does challenge the district court's admission of evidence of his prior burglary and forgery convictions. This issue arises because in August 2000 Nelson crawled in a side window at Swartz' house and took checks. Nelson forged two checks for $400 and $115 and attempted to cash one. The bank suspected the check was forged and contacted law enforcement. Nelson was convicted of burglary and forgery for those crimes.
Before trial in the case now before us, the State filed a K.S.A. 60-455 motion seeking to admit evidence of the prior burglary and forgery convictions. The district court initially denied this request. But during the trial, the district court announced it was reversing that decision and the evidence was admissible. The court held the evidence was relevant to prove intent, identity, knowledge, and absence of mistake or accident regarding the burglary and forgeries the jury was considering.
Nelson objected at the time the district court ruled that the evidence was admissible. Later that day, an officer testified about the prior crimes. But Nelson did not make a specific and timely objection to this testimony. At the conclusion of trial, the district court issued a limiting instruction stating the evidence could only be considered to prove intent, plan, and identity.
K.S.A. 60-404 requires a timely and specific objection in order to preserve issues related to the admission of evidence for appeal. It states:
"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."
This court has held this requirement is imposed even when the district court had already denied a motion to suppress evidence prior to trial. State v. Riojas, 288 Kan. 379, 385, 204 P.3d 578 (2009). And while we concede Nelson's facts are unusual because the district court initially excluded the evidence, changed its mind, and then informed the attorneys during trial that the evidence was admissible, Nelson's objection at the time the district court announced it had changed its mind and would admit this evidence was not sufficient to preserve the issue. Accordingly, we hold Nelson's failure to contemporaneously object when the evidence was offered during trial bars our consideration of the question now.

ISSUE FOUR: THE STANDARD FOR IMPOSING A HARD 50 SENTENCE
Nelson argues his sentence must be remanded for resentencing because the district court imposed the wrong standard when finding aggravating factors supported a mandatory minimum 50-year (hard 50) sentence. The State admits the wrong standard was applied, but it argues resentencing is not required.
Premeditated first-degree murder carries a life sentence with a mandatory minimum of 25 years before the defendant becomes eligible for parole unless the court finds the defendant should be subject to an enhanced minimum sentence. For crimes committed after July 1, 1999, this requires a mandatory hard 50 term. K.S.A. 21-4635; see K.S.A. 22-3717(b)(1). To impose the hard 50 sentence, the district court must find one or more of the aggravated circumstances enumerated in K.S.A. 21-4636 exist and that the aggravating factors are not outweighed by any mitigating factors. K.S.A. 21-4635(d). Nelson is challenging his mandatory minimum sentence. This affects the burden of proof.
Before sentencing, the State filed a notice of its intent to seek the hard 50 sentence. In that notice, the State argued that a preponderance of the evidence standard applied to the aggravating factors determination and *351 the evidence should be viewed in a light most favorable to the State. This is actually the standard for appellate review, not the standard of proof required for the district court to impose the hard 50 sentence. See State v. Spain, 263 Kan. 708, 720, 953 P.2d 1004 (1998) (The appellate standard of review is whether "after a review of all the evidence, viewed in a light most favorable to the State, a rational factfinder could have found the existence of the aggravating circumstance by a preponderance of the evidence.").
The State's error apparently infected the district court's analysis because at sentencing it stated it was looking at the evidence in a light most favorable to the State. The judge stated:
"That brings us down to whether this is a hard 40 or hard 50 case. I'm of the opinion the State has presented sufficient evidence to show the hard 50 is justified. More specifically, and the journal entry should reflect it, I am finding that pursuant to K.S.A. 21-4636 subsection (e), the defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution. There was evidence present[ed] during the trial that that was exactly the reason why the victim ... was killed. I believe the evidence strongly points to that conclusion, and looking at it in the light most favorable to the State in any event, I think that has clearly been shown." (Emphasis added.)
The State concedes the standard articulated by the district court was erroneous. But the parties disagree about what standard of proof applies. Nelson argues the aggravating factors must be proven beyond a reasonable doubt. The State argues a preponderance of the evidence standard applies. There is a conflict in this court's cases on this issue, and both parties cite precedent supporting their position. See State v. Jones, 283 Kan. 186, 216, 151 P.3d 22 (2007) (reasonable doubt standard); Spain, 263 Kan. at 720, 953 P.2d 1004 (preponderance of the evidence standard).
This issue was correctly determined in Spain. It held that the implicit standard of proof for aggravating circumstances under K.S.A. 21-4635(c) is a preponderance of the evidence. 263 Kan. at 714, 953 P.2d 1004. Nelson cites Jones as having established the reasonable doubt standard. Jones was decided after Spain, but it cites State v. Gideon, 257 Kan. 591, 609-11, 894 P.2d 850 (1995), a case predating Spain, as a case not requiring a reasonable doubt standard as to the existence of mitigating circumstances. See Jones, 283 Kan. at 216-17, 151 P.3d 22. Moreover, the vast weight of our case law applies a preponderance of the evidence standard, particularly when this issue is raised in a challenge under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). See, e.g., State v. Johnson, 284 Kan. 18, 22-23, 159 P.3d 161 (2007), cert. denied 552 U.S. 1104, 128 S.Ct. 874, 169 L.Ed.2d 737 (2008) ("judicial fact finding utilizing a preponderance of the evidence standard to increase the mandatory minimum sentence does not run afoul of the jury trial guarantee"); see also State v. Vasquez, 287 Kan. 40, 61, 194 P.3d 563 (2008) (preponderance); State v. Warledo, 286 Kan. 927, 954-55, 190 P.3d 937 (2008) (preponderance). The holding in Jones to the contrary is disapproved.
But the real issue remainswhat remedy applies when the district court uses the wrong standard of proof. Nelson argues his sentence should be remanded for resentencing. The State contends remand is unnecessary because the evidence supports a finding of the aggravating factors, and the district court properly weighed the aggravating and mitigating factors when imposing a hard 50 sentence.
The district court's determination that aggravated circumstances existed was obviously tainted with its view of the evidence in favor of the State, and the State is essentially asking this court to make its own factual findings that the aggravating circumstances exist. This court has repeatedly held appellate courts do not make factual findings, even if the record is sufficient for the court to reach the factual issues. Fact-finding is simply not the role of appellate courts. See, e.g., State v. Thomas, 288 Kan. 157, 161, 199 P.3d 1265 (2009). As such, Nelson's mandatory minimum sentence is remanded to the district court to determine whether aggravating *352 circumstances exist under a preponderance of the evidence standard.
Affirmed in part, reversed in part, and remanded with directions for resentencing.
DAVIS, C.J., not participating.
JOHNSON, J., concurring:
I concur in the ultimate result but write separately to disagree with the majority's application of K.S.A. 60-404 to bar appellate consideration of the admissibility of prior crimes evidence.
The trial judge announced during the trial that it was reversing its earlier K.S.A. 60-455 holding and finding that evidence of Nelson's prior crimes was admissible. Nelson objected. The objection was well in advance of any testimony about the prior crimes being presented to the jury. In the words of the statute: "[T]here appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404.
The trial judge had ample opportunity to consider the legal question presented by the defense so as to avoid conducting the trial with tainted evidence and to avoid possible reversal and a new trial, i.e., the purpose of K.S.A. 60-404 was fulfilled. See State v. King, 288 Kan. 333, 342, 204 P.3d 585 (2009) (stating the purpose of the contemporaneous objection rule). Any subsequent defense objections would have been tantamount to motions for reconsideration of the court's ruling. Neither the statute nor our case law calls for the repeated confirmation that the court's ruling still stands. Cf. Missouri Bank & Trust Co. v. Gas-Mart Development Co., 35 Kan.App.2d 291, 298, 130 P.3d 128 (2006) (application of law of the case doctrine appropriate to avoid re-litigating issue resolved in previous stage of same suit). Accordingly, I would have considered the merits of Nelson's evidentiary claim, albeit I would have found no error in admitting the evidence.