NOT DESIGNATED FOR PUBLICATION

No. 118,589

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

EDGAR HUGH EAKIN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed August 17, 2018. Reversed and remanded.

*William C. Votypka*, deputy county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Eric Fournier*, of Calihan Law Firm, P.A., of Garden City, for appellee.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

ROSAUER, J.:  The State appeals the district court's decision to suppress Edgar Eakin's statement made to police in an October 11, 2016 interview. Eakin is charged with four counts of rape, one count of aggravated indecent liberties with a child, one additional count of rape with an alternative count of aggravated indecent liberties with a child, and one count of attempted rape. After a hearing on Eakin's motion to suppress not only this statement but an October 10, 2016 statement to the police, the district court found the October 11 interrogation was custodial and without the benefit of the police having informed Eakin about his *Miranda* rights. The court also suppressed because it found

1

Eakin invoked his right to counsel during the interrogation. The court ruled the October 10, 2016 statement was not a custodial interrogation and the State could use that statement at trial. The only statement at issue before this court is the October 11, 2016 statement. For the reasons stated below, this court reverses the district court's finding the October 11 statement was custodial and thus requiring a reading of Eakin's *Miranda* rights. The court furthermore finds Eakin did not invoke his right to counsel. The court remands the matter to the district court for a determination of whether Eakin voluntarily made his October 11 statement.

FACTUAL AND PROCEDURAL HISTORY

Edgar Eakin met with Garden City police officers in an interrogation room at the law enforcement center in Garden City, Kansas, on both October 10 and 11, 2016. On the 10th, he arrived on his own, without police escort, submitted to what the police referred to as a voice stress test, and spoke with two police officers. Eakin returned the next day, again on his own without police escort. On this occasion he met with Detective Freddie Strawder of the Garden City Police Department. At no point during the interview did Strawder read Eakin his *Miranda* rights. Detective Strawder's interview of Eakin lasted about an hour, and Strawder allowed Eakin to leave the law enforcement center. About 15 minutes later, law enforcement arrested Eakin. Soon thereafter the State charged Eakin as described above.

Eakin moved to suppress both statements for two reasons. The first was his argument that the October 11 questioning was custodial and, thus, the police needed to read him his *Miranda* rights. His second reason was his assertion he actually invoked his right to counsel, but law enforcement did not provide him an attorney and instead continued the questioning.

2

The district court held an evidentiary hearing on Eakin's motion. The court found the interrogation to be custodial. Furthermore, the court found Eakin made two requests for counsel, one in the middle of the interview and the other at the end. The court found Eakin's ability to leave at the end of the second interview a "subterfuge" and a part of a "scam" law enforcement carried out on Eakin in that only 15 minutes after he left the law enforcement center, police arrested him without apparently gaining any new information in those intervening 15 minutes to justify the arrest. The court also found the second interview to be accusatory. The trial court found the voice stress test to be "fakery." Even though that finding is related to the court's setting of a *Daubert* hearing so as to determine whether the State could introduce evidence regarding that test, a reading of the trial court's findings suggests the use of this test added to what the court believed to be the second interview's custodial nature.

The State filed an interlocutory appeal of the court's suppression of this second statement.

ANALYSIS

*Standard of Review*

This court uses a dual standard of review to address a district court's decision on a motion to suppress. The appellate court first reviews the trial court's factual decisions under a substantial competent evidence standard. The appellate court does not reweigh the evidence, assess witness credibility, or resolve conflicting evidence. Then the court reviews de novo the ultimate legal conclusions the trial court made. See *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015). See also *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014) (applying this bifurcated standard when determining whether an interrogation is custodial). "Substantial evidence" refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

3

*Did Eakin request legal counsel?*

"The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to have a lawyer present during custodial interrogation and the right to remain silent." *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003) (citing *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966]). The right to counsel may be invoked at any time. *State v. Mattox*, 305 Kan. 1015, 1036, 390 P.3d 514 (2017).

> "Invocation of the right requires, at a minimum, some statement that can be reasonably construed as an expression of a desire for the assistance of an attorney during custodial interrogation. This rule has two components. First, the suspect '"must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."' This is an objective reasonableness test. 'Second, the request must be for assistance with the custodial interrogation, not for subsequent hearings or proceedings.' [Citations omitted.]" *Mattox*, 305 Kan. at 1036.

Once invoked, law enforcement must honor the decision and cut off further interrogation. If a suspect's statements may be ambiguous, law enforcement may continue without clarifying questions. While it is good practice for an interrogator to ask clarifying questions to an ambiguous statement, it is not required. *Mattox*, 305 Kan. at 1036-37.

During his questioning, Eakin made two statements about counsel. First, he told Detective Strawder, "I'm thinking that maybe I need some legal advice." In response, Detective Strawder said, "[t]hat's totally up to you. Because I can tell you that you do have that right. Okay. What I'm doing here today is giving you the opportunity to tell your story." Detective Strawder made no further attempts to clarify Eakin's statement, and Eakin did not follow up on his comment before confessing. After the conclusion of

questioning, Detective Strawder asked Eakin why he came without a lawyer. Eakin advised a lawyer would complicate things, and he couldn't afford one.

Eakin's statements correspond closely with the statements the defendant made in *Mattox*, where the Kansas Supreme Court found there was not a clear invocation of the right to counsel. In *Mattox*, the defendant said, "[y]ou all care if I get a lawyer in here?", and the Supreme Court found that statement was not a clear invocation of the right to counsel. 305 Kan. at 1038-39. The court reasoned the statement was ambiguous. *Mattox*, 305 Kan. 1039. Similarly, Eakin's statement was ambiguous and not a clear invocation. And even though Detective Strawder was under no obligation to clarify, he told Eakin whether to talk to an attorney was up to him and that Eakin had the right to counsel. Eakin chose to continue the questioning.

Regarding being able to an afford an attorney, Eakin only mentioned his concerns at the end of the questioning about not having money for an attorney. Neither was that statement an unambiguous invocation of his right to counsel. To the extent Eakin chose to not obtain an attorney because of concerns about not being able to afford one, under these circumstances Strawder was under no legal obligation to explore why Eakin might or might not want to consult with an attorney. In any event, Eakin made this statement at the end of the questioning after he made his incriminating statements.

In sum, at no point during the questioning did Eakin clearly articulate a wish to consult with counsel or have counsel present.

*Was the second interview custodial such that the police needed to inform Eakin about his Miranda rights?*

A "[c]ustodial interrogation has been described as the questioning (or its functional equivalent) of persons by law enforcement officers, initiated and conducted

5

while such persons are held in legal custody or are otherwise deprived of their freedom of action in any significant way." *State v. Jones,* 283 Kan. 186, 194, 151 P.3d 22 (2007), *disapproved on other grounds by State v. Nelson*, 291 Kan. 475, 243 P.3d 343 [2010]). Law enforcement must provide *Miranda* warnings to the accused when he or she is in custody and subject to interrogation. *Lewis*, 299 Kan. at 834–35. An interrogation is custodial when, using an objective standard, a reasonable person, under the totality of the circumstances, would have felt he or she could not terminate the interrogation. *State v. Swindler*, 296 Kan. 670, 682, 294 P.3d 308 (2013). Factors a court may consider when analyzing whether an interrogation is custodial include:  the place and time of the interrogation; the duration of the interrogation; the number of police officers present; the conduct of the officers and the person subject to the interrogation; the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; whether the person is being questioned as a suspect or a witness; whether the person being questioned was escorted by the police to the interrogation location or arrived under his or her own power; and the result of the interrogation, for instance, whether the person was allowed to leave, was detained further, or was arrested after the interrogation. No one factor outweighs another, nor do the factors bear equal weight. The court must analyze each case on its own particular facts. *Lewis*, 299 Kan. at 835.

As a basis for finding a custodial interrogation, the trial court found that while Eakin was free to leave, the police arrested him 15 minutes later. The court determined that with his arrest location, the police either followed Eakin after he left the detention center or the police left within minutes of Eakin leaving. The court also found the criminal investigation had narrowed before the second interview, effectively making Eakin the only suspect. The court found there were "many lies" the police told Eakin and the questioning turned accusatory. Looking at the context of the findings in relation to the transcript of the interview, the recording for which was evidence before the court, it appears the trial court was referring to Detective Strawder's comments where he

6

attempted to make the interview nonconfrontational and his assurances Eakin could leave after the interview. The court also referred to the voice stress test Eakin received during the first interview and which Strawder informed Eakin he failed during this second interview. However, the court did not specifically find the voice stress test contributed to the court's decision that the second questioning was custodial.

Analyzing these findings in accordance with the *Lewis* factors, this court finds the interrogation was not custodial. The place of the interrogation was the police department, but it appears the timing of the interrogation was during normal business hours. To put the matter differently, the interrogation did not occur in the late evening or early morning hours when Eakin might have been at a disadvantage as a result of fatigue. The duration of the interrogation was not particularly long coming in at about an hour. There was only one police officer present as far as this court can tell from the record. While the court noted the detective lied, there is nothing in the record to indicate the detective behaved in a threatening or confrontational manner. Indeed, the court's finding regarding the "many lies" told Eakin seems to involve the fact the officer was trying to make the interrogation seem far less accusatory or threatening to Eakin. Other than the "lies," there is nothing regarding the detective's conduct that made the confrontation more coercive than a typical noncustodial interview. Neither did Eakin appear to be operating at an incapacity, or at least the trial court made no such finding. Eakin was under no physical restraint. He arrived at the police station under his own power. The police allowed Eakin to leave even though they arrested him 15 minutes later. However, from Eakin's perspective, he knew he was free to leave at any time during the interrogation. Indeed, he had freely left the day before. Certainly the police were questioning Eakin as a suspect. That a person is a suspect does not, in itself, make questioning custodial. See *Beckwith v. United States*, 425 U.S. 341, 346, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976). See also *Jones*, 283 Kan. at 197-98 (finding that extending *Miranda* to every situation where the interviewee is a suspect undercuts *Miranda*'s holding from its rationale). A review of Exhibit 2, which the court referenced in its findings as indicative of the investigation having "narrowed" shows that

7

Eakin knew from the get-go he was a suspect. In addition, a reading of Exhibit 2 does not indicate a coercive environment where the officer is threatening Eakin with dire consequences should he not confess. Eakin came to the interrogation of his own power and without police escort. The police allowed him to leave, although they did arrest him about 15 minutes later. While the court found the interrogation custodial, at no point did the trial court find Eakin believed he was not free to leave. Indeed, a review of the transcript shows the police officer repeatedly told Eakin he was free to leave, and Eakin did in fact leave. A reasonable person in Eakin's position on October 11, 2016, would have felt free to terminate the questioning and leave. See *State v. Morton*, 286 Kan. 632, 640, 186 P.3d 785 (2008). There is not substantial competent evidence supporting the trial court's determination that this second interview was custodial.

The court is not now reaching a determination of voluntariness. Rather, the court is only making a decision about whether the questioning constituted a custodial interrogation. The trial court made no specific findings regarding voluntariness. Therefore, this court remands this matter to the district court to make a determination about whether Eakin made his statement voluntarily.

Reversed and remanded with directions.