IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,036

STATE OF KANSAS,
*Appellee*,

v.

YAMUNA RIZAL,
*Appellant.*

SYLLABUS BY THE COURT

To convict a defendant of possession with intent to distribute a controlled substance under K.S.A. 2011 Supp. 21-5705(a), the State must prove the defendant had knowledge of the nature of the controlled substance. This knowledge requirement can be established by proving the defendant either knew the identity of the substance or knew that the substance was controlled. A mistake of fact about the nature of a controlled substance can negate the knowledge requirement.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 17, 2017. Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed July 19, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Jonathan Laurans*, of Kansas City, Missouri, argued the cause, and *Christopher Angles*, of The Angles Law Firm, LLC*, of Kansas City, Missouri, was with him on the briefs for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *James Crux*, legal intern, *Stephen J. Obermeier*, senior deputy district attorney, *Stephen M. Howe,* district attorney, and *Derek Schmidt,* attorney general, were with him on the briefs for appellee.

1

The opinion of the court was delivered by

STEGALL, J.:  After a bench trial on stipulated facts, the Johnson County District Court convicted Yamuna Rizal of possessing a controlled substance with the intent to distribute it at a gas station she owned in Shawnee. On appeal, Rizal argues the evidence was insufficient to support her conviction because of a mistake of fact—that she believed the packets she sold contained lawful incense, not a controlled substance. We hold the State was required to prove that Rizal had knowledge of the nature of the controlled substance she possessed and that it proved this element through circumstantial evidence. As a result, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, Detectives Shawn Miller and Steve Hahne with the Shawnee Police Department went to a Phillips 66 gas station to investigate a tip that the store was selling synthetic cannabinoids. When the detectives arrived, they found Rizal, a coowner of the store, working behind the counter. She agreed to let the detectives search behind the counter. They soon discovered packages that appeared to contain synthetic cannabinoids located under the counter, hidden from view. The packages later tested positive for naphthoylindole, a synthetic cannabinoid commonly called "K2." Rizal's gas station was located across the street from an elementary school.

The State charged Rizal with possession with intent to distribute naphthoylindole, a controlled substance, within 1,000 feet of a school. See K.S.A. 2011 Supp. 21-5705(a)(7) (making it unlawful to "possess with the intent to distribute any of the following controlled substances . . . any substance designated in subsection (h) of K.S.A. 65-4105"); K.S.A. 2011 Supp. 65-4105(h)(2) (listing naphthoylindoles as controlled substances); K.S.A. 2011 Supp. 21-5705(c)(1)(A) (increasing the severity level for

2

possession with intent to distribute a controlled substance that occurs within 1,000 feet of school property). The State also charged her with a drug stamp violation.

Rizal filed a motion to suppress, claiming her *Miranda* rights were violated and her consent to search was involuntary. The district court held a suppression hearing and denied the motion. Then the case went to a bench trial on stipulated facts:

"1. On April 3, 2012, Det. Shawn Miller and Det. Steve Hahne of the Shawnee Police Department responded to the Phillips 66 located . . . in Shawnee, Johnson County, Kansas regarding a tip that the store was selling synthetic cannabinoids. This tip had come from the Johnson County Adult Residential Center which had located some synthetic cannabinoids at their facility which had purportedly come from the Phillips 66 located in Shawnee.

"2. Both officers were dressed in plain clothes with black vests marked 'Police' and police badges.

. . . .

"4. Upon entering the store Det. Miller introduces himself to the woman working behind the counter. She is later identified as the defendant, Yamuna Rizal, who is over the age of 18 . . . .

"5. Rizal is wearing a 'DARE to Resist Drugs' t-shirt during their contact and has a piece of fabric printed with marijuana leaves covering the stool behind the counter which is clearly visible to people purchasing items at the counter.

"6. Det. Miller tells Rizal about the tip they have received, he asks her if she is selling 'incense', 'flavored tobacco' or 'K2'. She says she is not and that those products are illegal. During this conversation a customer comes up and Det. Miller offers to stand aside so Rizal can assist the customer. Det. Miller then asks Rizal if [*sic*] 'just comes around the corner here and checks' and Rizal says 'no' (indicating she does not mind).

"7.  Rizal initially says she does not know what Det. Miller means by 'K2' and he then describes the product. Det. Miller asks Rizal if she is the store owner and she states that she is.

"8.  During the entire course of their contact Rizal continues to wait on customers as they come into the store.

"9.  Det. Miller specifically asks a number of times if he can look in various areas and Rizal continually indicates he can search. While Det. Miller is behind the counter, Det. Hahne stays out of the way on the other side of the counter in the store.

"10. Officers locate a number of product packages which they believe are synthetic cannabinoids under the counter of the store and out of sight. These packages are labeled with names such as 'Kush', 'Caution', 'Flame' and 'Barely Legal'.

"11. Rizal offers to let the detectives go into the back of the store and take any additional packets of product which are also believed to be synthetic cannabinoids. Additional packages are located in the back room of the store and these are recovered.

"12. Det. Miller asks Rizal what customers would ask for if they wanted to purchase the products he has located behind the counter and Rizal says they would ask for 'incense'. Rizal says the last time she has sold the product was a month ago but then later says it was a week ago and then indicates they have been continuing to sell the product when she is confronted with paperwork indicating the store has ordered hundreds of packets of the product from distributors over the past few weeks. Paperwork recovered by Det. Miller showed the Phillips 66 had ordered over 3,000 packages of synthetic cannabinoids over the previous 4 months from a distributor in Florida.

"13. Rizal was able to tell Det. Miller the prices she was charging for some of the packages of product recovered. Rizal admitted she was selling 5 to 10 packages of synthetic cannabinoid per day.

4

"14. At the conclusion of their search and discussion with Rizal the officers exit the store. Rizal is not placed in handcuffs, physically restrained in any manner, touched or arrested during the officers contact with her.

"15. The Phillips 66 is located . . . across the intersection from Shawanoe Elementary School. . . .

"16. . . . The distance from the Phillips 66 to the Shawanoe Elementary School was determined to be 827 feet.

"17. The packages of suspected synthetic cannabinoid are submitted to the Johnson County Crime Lab for testing. The Lab Report confirms the packets contain illegal synthetic cannabinoids (commonly called K2). See attached Lab Report, State's Exhibit 1. The total weight of the synthetic cannabinoids was in excess of 1 gram and there was not a Kansas Drug Tax Stamp affixed to the packages.

The district court found Rizal guilty on both counts and sentenced her to 36 months' probation and 60 days' jail time. Rizal timely appealed.

In the Court of Appeals, Rizal argued the district court erred when it denied her motion to suppress and the evidence was insufficient to convict her of possession with intent to distribute a controlled substance. The Court of Appeals affirmed the district court on both grounds. *State v. Rizal*, No. 115,036, 2017 WL 658708 (Kan. App.) (unpublished opinion), *rev. granted* 306 Kan. 1329 (2017). The decision to deny Rizal's motion to suppress is not before us because Rizal did not petition for review of that issue. See Supreme Court Rule 8.03(b)(6)(C)(i) (2019 Kan. S. Ct. R. 53).

As for sufficiency, Rizal argued the State did not prove she possessed the K2 with "knowledge," as that term is defined in *McFadden v. United States*, 576 U.S. __, 135 S. Ct. 2298, 192 L. Ed. 2d 260 (2015). In that case, the United States Supreme Court held

that a conviction under 21 U.S.C. § 841(a)(1) (2012), which makes it unlawful to possess a controlled substance with the intent to distribute it, "requires the Government to establish that the defendant knew he was dealing with 'a controlled substance.'" 135 S. Ct. at 2302. The Court held that this "knowledge requirement" could be established two ways: (1) "by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was," and (2) "by showing that the defendant knew the identity of the substance he possessed." 135 S. Ct. at 2304. Rizal claimed the evidence fell short of *McFadden* because the State only proved that she knowingly sold what she thought was incense. Essentially, she argued a mistake of fact negated the requisite culpable mental state.

The Court of Appeals declined to adopt the *McFadden* knowledge requirement. It reasoned that "[u]nlike in *McFadden*, nothing in the Kansas statutes suggests that Rizal needed knowledge of the specific drug she was distributing." *Rizal*, 2017 WL 658708, at *9. In the panel's view, the State only had to prove that Rizal knew she was exercising control over something—she did not have to know what that something was. 2017 WL 658708, at *9. But in the alternative, the panel held that if *McFadden* applied, the State presented sufficient circumstantial evidence that Rizal knew the packages she possessed contained a controlled substance. 2017 WL 658708, at *10.

There are now two issues before us: (1) whether the Court of Appeals erred when it rejected *McFadden*'s knowledge requirement and held that a conviction for possession with intent to distribute a controlled substance does not require proof that the defendant knew the nature of the substance possessed, and (2) whether the State presented sufficient evidence that Rizal knew she was selling a controlled substance.

ANALYSIS

*Rizal's new argument that she sold a controlled substance analog, instead of a controlled substance, is not preserved.*

As a preliminary matter, Rizal now claims for the first time on appeal that the substance she possessed was not actually a controlled substance, but a controlled substance *analog*. This distinction could make a difference because possession of an analog can be harder to prove. A substance is "controlled" in Kansas if it is listed in one of the schedules, like naphthoylindole. See K.S.A. 2011 Supp. 21-5701(a) (defining "controlled substance" as "any drug, substance or immediate precursor included in any of the schedules"). In contrast, a "controlled substance analog" is defined as "a substance that is intended for human consumption" that (1) has a chemical structure "substantially similar" to that of a controlled substance; (2) has a "stimulant, depressant or hallucinogenic effect on the central nervous system substantially similar" to that of a controlled substance; or (3) the defendant "represents or intends" to have the effects listed in (2). K.S.A. 2011 Supp. 65-4101(bb)(1); see K.S.A. 2011 Supp. 65-4101(bb)(2) ("'Controlled substance analog' does not include:  (A) A controlled substance."). So, for example, an analog of naphthoylindole could be a substance with a substantially similar chemical structure, though it is not specifically listed in the schedules.

The record shows that Rizal possessed naphthoylindole, a controlled substance. The lab report, which was attached to the stipulated facts, states that naphthoylindole was found in the packets Rizal sold. The district court found that she possessed naphthoylindole, a controlled substance, based on that lab report. And Rizal did not dispute that finding or the lab results before the district court.

To sidestep the record, Rizal now argues—for the first time in a supplemental brief—that the substance she sold chemically differs from naphthoylindole based on her

7

lay analysis of the chemical compounds found in the packets. She invites us to use Wikipedia to decipher the chemical compounds listed in the lab report. But we decline to experiment with Wikipedia chemistry. See Peoples, *The Citation of Wikipedia in Judicial Opinions*, 12 Yale J. L. & Tech. 1, 29 (2010) (cautioning courts against "turning to Wikipedia to conduct . . . ex parte research into the facts of cases before them"); see generally Wilson, *Proceed with Extreme Caution: Citation to Wikipedia in Light of Contributor Demographics and Content Policies*, 16 Vand. J. Ent. & Tech. L. 857 (2014). And it is not our job to engage in fact-finding. See *State v. Nelson*, 291 Kan. 475, 488, 243 P.3d 343 (2010) ("Fact-finding is simply not the role of appellate courts."). Thus, we conclude that Rizal's new analog argument is unpreserved, and we accept as an undisputed fact in the record before us that Rizal possessed the controlled substance naphthoylindole. See *State v. Rizo*, 304 Kan. 974, Syl. ¶ 1, 377 P.3d 419 (2016) ("The general rule is that issues not raised before the trial court cannot be raised for the first time on appeal.").

*The crime of possession with intent to distribute a controlled substance requires proof that the defendant had knowledge of the nature of the controlled substance.*

Moving to the merits, Rizal asks us to adopt a *McFadden*-like approach and hold that the crime of possession with intent to distribute a controlled substance requires proof that the defendant either knew the identity of the substance or knew the substance was controlled. This means a mistake of fact—such as Rizal's alleged belief that the packets she sold contained ordinary incense—could negate the required knowing culpable mental state. See K.S.A. 2018 Supp. 21-5207(a) (generally, a mistake of fact "is a defense if it negates the existence of the culpable mental state which the statute prescribes with respect to an element of the crime"). The State claims the Court of Appeals was correct, so it only had to prove that Rizal knowingly exercised control over the packets—a fact nobody disputes. From the State's perspective, a mistake of fact as to the nature of the

8

item possessed—i.e., whether the item is an ordinary brownie dessert or a brownie laced with a controlled substance—is no defense to this crime.

Rizal admits that *McFadden*—a federal decision interpreting a federal statute—is not controlling here. But she argues *McFadden* is persuasive because the Kansas crime of possession with intent to distribute a controlled substance bears a strong resemblance to its federal counterpart and the two share the same knowledge requirement. But, as Rizal implicitly recognizes, the root question is still one of Kansas statutory law.

"[S]tatutory interpretation is a question of law subject to unlimited review." *State v. Buell*, 307 Kan. 604, 606, 412 P.3d 1004 (2018). The traditional principles of statutory interpretation guide our analysis:

> "'The most fundamental rule is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent.' [Citations omitted.]" *City of Dodge City v. Webb*, 305 Kan. 351, 356, 381 P.3d 464 (2016).

In *McFadden*, the United States Supreme Court interpreted 21 U.S.C. § 841(a)(1), which states that "it shall be unlawful for any person *knowingly* or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." (Emphasis added.) The Court determined that the knowledge requirement could be satisfied two ways:

9

"That knowledge requirement may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was. Take, for example, a defendant whose role in a larger drug organization is to distribute a white powder to customers. The defendant may know that the white powder is listed on the schedules even if he does not know precisely what substance it is. And if so, he would be guilty of knowingly distributing 'a controlled substance.'

"The knowledge requirement may also be met by showing that the defendant knew the identity of the substance he possessed. Take, for example, a defendant who knows he is distributing heroin but does not know that heroin is listed on the schedules, 21 CFR § 1308.11 (2014). Because ignorance of the law is typically no defense to criminal prosecution, *Bryan v. United States,* 524 U.S. 184, 196, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998), this defendant would also be guilty of knowingly distributing 'a controlled substance.'" *McFadden*, 135 S. Ct. at 2304.

In contrast, the relevant Kansas statute does not mention a knowledge requirement on its face. K.S.A. 2011 Supp. 21-5705(a) states: "It shall be unlawful for any person to cultivate, distribute or possess with the intent to distribute" any controlled substance, including naphthoylindoles. See K.S.A. 2011 Supp. 21-5705(a)(7); K.S.A. 2011 Supp. 65-4105(h)(2). The Court of Appeals noticed this discrepancy and concluded that "[t]he Kansas statute does not contain 'knowing' language because it is silent as to *mens rea*." *Rizal*, 2017 WL 658708, at *9.

We disagree with the Court of Appeals on this point. The plain language of K.S.A. 2011 Supp. 21-5705(a) contains two mental states, one on its face and the other imbedded in the definition of the word "possession," which applies to crimes involving controlled substances. See K.S.A. 2011 Supp. 21-5701(q) (defining the term "possession"). First, K.S.A. 2011 Supp. 21-5705(a) requires possession to be committed "with the intent to distribute" any controlled substance. Second, K.S.A. 2011 Supp. 21-5701(q) defines "possession" as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person

has some measure of access and right of control." The possessed item here is a "controlled substance," which is defined as "any drug, substance or immediate precursor included in any of the schedules," like napthoylindole. K.S.A. 2011 Supp. 21-5701(a).

Harmonizing these provisions, the crime of possession with intent to distribute a controlled substance requires proof that the defendant possessed—meaning knowingly exercised control—over any controlled substance with the intent to distribute it. But what does it mean to "knowingly" exercise control over a controlled substance? The State argues that "knowingly" applies only to the act of exercising control over the packets. But Rizal claims "knowingly" also extends to the nature of the substance itself—meaning knowledge of its identity (a napthoylindole) or its controlled status, as in *McFadden*.

To resolve this question, we turn to the plain language of the term "knowingly." As defined by statute: "A person acts 'knowingly,' or 'with knowledge,' with respect to the *nature* of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the *nature* of such person's conduct or that the circumstances exist." (Emphases added.) K.S.A. 2011 Supp. 21-5202(i); see PIK Crim. 4th 52.010 (2015 Supp.). In this context, the term "nature" commonly means "[a] fundamental quality that distinguishes one thing from another; the essence of something." Black's Law Dictionary 1238 (11th ed. 2019); see Webster's New World College Dictionary 974 (5th ed. 2014) (defining "nature" as: "the essential character of a thing; quality or qualities that make something what it is; essence"). Taken together, this means a person must know the essence of the substance possessed; the fundamental quality that distinguishes that substance from another one.

Kansas caselaw has long supported this interpretation. For decades, we have required the State to prove that a defendant knew about the nature of the substance possessed to sustain a conviction for possession of a controlled substance. See *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015) ("Possession of a controlled substance

11

requires specific intent to exercise control over the substance, with knowledge of the nature of the substance."); *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989) (same); see also *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976) ("Knowledge signifies awareness and is a requirement for 'possession.' 'Knowledge of the presence of a narcotic or dangerous drug as embraced within the concept of physical control with the intent to exercise such control is essential.'").

We also discussed the type of knowledge required for possession of a controlled substance—and how a mistake of fact may negate that knowledge—in the context of a challenge to the admissibility of prior drug crime evidence under K.S.A. 60-455. In *State v. Rosa*, 304 Kan. 429, 437, 371 P.3d 915 (2016), we held that evidence of a defendant's prior acquaintance with drugs is admissible under K.S.A. 2014 Supp. 60-455(b) when the defendant puts his or her knowledge in dispute by providing an innocent explanation for the presence of the drugs. As we explained, "Possible 'innocent explanations' would include the claims that the defendant either was unaware of the presence of the drugs or was under the mistaken belief that the drugs were not illegal drugs but were *some other lawful substance*." (Emphasis added.) 304 Kan. at 437. In either scenario, "evidence of prior drug use by the defendant is relevant and probative to prove a disputed material fact—*viz.*, the truth or falsity of the defendant's 'innocent explanation.'" 304 Kan. at 437; see *State v. Graham*, 244 Kan. 194, 196-97, 768 P.2d 259 (1989).

Today, we hold that to convict a defendant of possession with intent to distribute a controlled substance under K.S.A. 2011 Supp. 21-5705(a), the State must prove that the defendant had knowledge of the nature of the controlled substance—meaning, that the defendant either knew the identity of the substance or knew that the substance was controlled. This tracks longstanding caselaw and the plain language of K.S.A. 2011 Supp. 21-5705(a) (possession with intent to distribute a controlled substance); K.S.A. 2011 Supp. 21-5701(q) ("possession"); and K.S.A. 2011 Supp. 21-5202(i) ("knowingly"). We agree with Rizal that a mistake of fact about the nature of a controlled substance—

12

meaning the actual belief that it is "some other lawful substance" that is not controlled, *Rosa*, 304 Kan. at 437—could negate the knowledge requirement. Thus, the plain language of the relevant Kansas statutes dictates a result much like *McFadden*.

*The State presented sufficient evidence that Rizal knowingly possessed a controlled substance.*

The final question is whether the State presented sufficient evidence that Rizal either knew the substance was a naphthoylindole or knew the substance was controlled. In the stipulated facts, Rizal told the officers that customers would ask for "incense" to buy the packets. Rizal claims she used that term innocently and believed she was selling lawful incense; she did not know what the substance was or that it was controlled. She does not dispute that she intended to distribute the packets.

The State argues that Rizal knew the substance in the packets was illegal, though she used the euphemism "incense" to describe it. For example, the State points out that one detective asked if Rizal was selling "incense," "flavored tobacco," or "K2,"—street names for synthetic cannabinoids—and she said no and explained that those products are illegal. The State also argues that Rizal's contradictory statements about when she last sold the packets suggest that she knew she was selling something illegal.

"When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 (2016). We do not reweigh evidence, resolve conflicting evidence, or pass on the credibility of witnesses. 304 Kan. at 694. Furthermore, "there is no distinction between direct and circumstantial evidence in terms of probative value" because "'[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an

13

inference is a reasonable one, the jury has the right to make the inference.'" 304 Kan. at 694 (quoting *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 9, 245 P.3d 1030 [2011]).

In short, we agree with the Court of Appeals that there is sufficient "circumstantial evidence that the Rizal knew she was distributing a substance listed on the schedules, even if she did not know which substance it was." *Rizal*, 2017 WL 658708, at *10. The packets were hidden below the counter, out of public view. Rizal acknowledged that so-called "incense" is illegal to sell; admitted that customers would ask for "incense" to buy the packets; was evasive about when she last sold the packets; and eventually admitted that she sold 5-10 packets per day. See 2017 WL 658708, at *10. Rizal's comments and behavior suggest that she did not, in fact, believe she was selling lawful incense but rather an illegal substance with the same street name. Viewed in the light most favorable to the State, a rationale fact-finder could find beyond a reasonable doubt that Rizal knowingly possessed a controlled substance on these facts.

In sum, we conclude the Court of Appeals erred in its interpretation of K.S.A. 2011 Supp. 21-5705(a)'s knowledge requirement. But we affirm the Court of Appeals' alternative holding that the State presented sufficient evidence that Rizal knew the substance was controlled. For that reason, we affirm.

Affirmed.

JOHNSON, J., not participating.
GLENN R. BRAUN, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  District Judge Braun was appointed to hear case No. 115,036 vice Justice Johnson under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

14