NOT DESIGNATED FOR PUBLICATION

No. 127,972

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RANDALL SCOTT GEORGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed May 15, 2026. Conviction affirmed, sentence vacated in part, and case remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM: Randall Scott George entered a vacant house after the owner left; while George was still in the house, the owner returned with her daughter. George now timely appeals his jury conviction for aggravated burglary, arguing the house was vacant upon entry and he lacked the intent to steal once other persons were present. He admits he committed a burglary, but not aggravated burglary, and now asserts the district court's failure to give a simple burglary instruction was clear error. Finally, he requests resentencing as the district court failed to award him 378 days of jail credit for time

1

served during the pendency of the case's disposition. Following our extensive review, we find the evidence was sufficient to support his conviction for aggravated burglary and the failure to give a burglary instruction was not clear error. Finally, we agree with George's claim for additional jail credit for the days he was incarcerated pending disposition of this case. Therefore, we affirm his conviction, but we vacate his sentence in part and remand for the district court to recalculate George's jail credit.

FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 2021, George and Vada Carpenter had multiple brief encounters while Carpenter was evicting tenants from one of her rental properties. According to Carpenter, she told George multiple times that no one was allowed on the property and that anyone on the property thereafter was criminally trespassing. Carpenter left the property and returned approximately 20 minutes later with her daughter to finish posting no trespassing signs and to search for a lost cell phone.

Upon returning to the house, Carpenter and her daughter discovered someone had tampered with the back door. Carpenter left again to retrieve boards to secure the door while her daughter waited in the house near the back door. When Carpenter returned, she discovered George hiding in the house behind items next to the back door. Carpenter held up a board, told George not to move, and instructed her daughter to dial 911. All three remained in the house until Wichita Police Department officers arrived.

Officers detained George, and he told them he entered the house after he suspected someone was inside, claiming the individual exited through a window. George said he knew the tenants were evicted and, once inside, decided to search for food and furniture. George claimed he tried to exit the house through the back door, but a broken doorknob denied his exit, so he tried to hide. While detained, an officer searched George and discovered two pipes and a baggie containing blue pills, later identified as Percocet.

2

George was charged with one count each of aggravated burglary and possession of an opiate. On April 2, 2024, a jury found him guilty as charged. The district court sentenced George, but his sentences are not an issue before us other than his claim for additional jail credit that was assigned to another case and not this one. George does not challenge his conviction for possession of an opiate.

Additional facts are included as necessary.

ANALYSIS

*Sufficient Evidence Supported George's Aggravated Burglary Conviction*

George relies on *State v. Daws*, 303 Kan. 785, 368 P.3d 1074 (2016), to argue his aggravated burglary conviction cannot be sustained as the State failed to prove he entered the house with people in it with the intent to steal. He contends the residence was vacant when he entered and he later developed the intent to steal food once inside. He also claims he did not know Carpenter and her daughter would return while he was still in the house.

The State responds George misinterprets *Daws* and a person need not be present in the dwelling while a defendant has the intent to steal. The State contends K.S.A. 2021 Supp. 21-5807(b) provides alternative means by which a defendant may commit aggravated burglary and requires "that the presence of a human only has to occur at some point during the physical conduct and the state of mind." The State asserts that the statutory requirements were met as George impermissibly entered the house, intended to take food and furniture, and was still in the house when Carpenter and her daughter entered the house upon returning.

3

*Standard of Review*

When reviewing a challenge to the sufficiency of the evidence, we determine "'whether, after reviewing all the evidence in a light most favorable to the prosecution, . . . a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [We] do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). This high burden warrants reversal "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt . . . ." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). Moreover:

> "'[T]here is no distinction between direct and circumstantial evidence in terms of probative value' because "'[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference."'" *State v. Rizal*, 310 Kan. 199, 209-10, 445 P.3d 734 (2019).

*Discussion*

To sustain George's aggravated burglary conviction under K.S.A. 2021 Supp. 21-5807(b)(1), the State must prove he "enter[ed] into or remain[ed] within" a dwelling without consent and "with intent to commit a felony [or] theft" when there was a human being present. The elements listed in the jury instructions accurately reflected the statute.

*Daws* is instructive. In *Daws*, the victim arrived at the house he was moving out of and discovered the front door was kicked in. Upon entry, he saw Daws. The victim instructed Daws to leave, and Daws complied. The victim noticed property was removed from some boxes and found two bags containing property that was not his. The State charged Daws with aggravated burglary, claiming he "'did unlawfully without authority *enter into a building* . . . which is a dwelling, in which there was a human being, to wit:

[victim], with the intent to commit a theft therein.'" 303 Kan. at 786-87. The State omitted the "remaining within" clause of the statute. 303 Kan. at 793.

At trial, Daws did not dispute his presence in the house. He stated he witnessed another individual kick in the door and followed that person inside, then decided to stay overnight as the house seemed abandoned. Daws testified he did not intend to take any property.

The district court denied Daws' request for a simple burglary instruction, explaining a victim need only be present at some point. A jury convicted him as charged. Daws raised multiple issues on appeal, but only two are relevant here: "(1) There was insufficient evidence of aggravated burglary because the victim was not present upon entry;" and "(2) the district court should have instructed the jury on simple burglary." 303 Kan. at 788. He argued the evidence was insufficient to sustain his conviction because the State simply alleged he "enter[ed] into" a dwelling and, under such theory, a human must be present during the defendant's entry. 303 Kan. at 790. Another panel of our court affirmed Daws' conviction, but our Supreme Court overruled the line of cases the panel relied on. 303 Kan. at 786.

The *Daws* court explained: "'[T]he phrases "entering into" and "remaining within" refer to legally distinct factual situations'" which create "alternative means of committing the crime." 303 Kan. at 789. A defendant enters into when the evidence establishes the defendant "crossed the plane of a building's exterior wall," and remains in when the defendant stays within the building after entering. 303 Kan. at 789. Although both situations may last "longer than a mere moment, . . . 'remaining within connotes at least briefly continuous behavior.'" 303 Kan. at 789.

The *Daws* court stated that "aggravated burglary is complete once unauthorized entry occurs." 303 Kan. at 793. Our Supreme Court explained the human presence

5

element is an "attendant circumstance" and is therefore not governed by the general rule that the actus reus and mens rea must concur. 303 Kan. at 793. Rather, the human presence element "must concur with the other elements." 303 Kan. at 793-94. The court reversed Daws' conviction, reasoning the evidence was not sufficient as the jury was only instructed on the entering into method of committing aggravated burglary and the victim was not in the house when Daws entered. 303 Kan. at 794.

Here, the jury instructions included the remaining within method of committing aggravated burglary. To sustain a conviction for aggravated burglary under the remaining within method of committing the offense, the State had to prove George was inside the dwelling without authority with an intent to commit a theft, and he remained within the dwelling after another person entered. See K.S.A. 2021 Supp. 21-5807(b)(1); *Daws*, 303 Kan. at 794. Sufficient evidence supports George's conviction for aggravated burglary because it shows he entered the house without Carpenter's consent, took food that did not belong to him, and remained hidden within the house while Carpenter's daughter waited inside the house for her mother to return to secure the back door.

Although George argues his only intent was to hide once Carpenter and her daughter returned and entered the house, he ignores that he had already put "macaroni and cheese and stuff in a bag" and "got like 10, 20 boxes of it." His conduct reflects his intent to take food from Carpenter's house without permission was concurrent with Carpenter's presence, even if only by mere moments. Put differently, George may have abandoned his intent to take property once he realized Carpenter and her daughter were present or when he realized he could not escape but, by then, the offense had occurred. When viewed in a light most favorable to the State, the evidence supports finding George committed aggravated burglary as he entered the house without authorization, took property he did not own, and remained within the house once humans were present.

6

*A Lesser Included Instruction on Burglary Should Have Been Given*

*Standard of Review*

Our review of a challenge to the jury instructions follows a four-step framework:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 [132 S. Ct. 1594, 182 L. Ed. 2d 205] (2012)].' [Citation omitted.]" *State v. Aguirre*, 313 Kan. 189, 218, 485 P.3d 576 (2021).

George did not request a jury instruction on burglary below, so our review is limited to clear error. See K.S.A. 22-3414(3); *State v. King*, 297 Kan. 955, 985, 305 P.3d 641 (2013). And George bears the burden of "firmly convincing us the jury would have reached a different verdict" had the district court given the instruction. 297 Kan. at 985.

*A burglary instruction was legally appropriate.*

The parties do not dispute that a jury instruction for burglary was legally appropriate. Burglary is a lesser included offense of aggravated burglary. See K.S.A. 21-5109(b)(1) (defining lesser included offense as lesser degree of same crime); K.S.A. 2021 Supp. 21-5807(a), (b) (defining burglary and aggravated burglary). The only relevant difference between the two crimes is the human presence element in aggravated burglary.

7

Compare K.S.A. 2021 Supp. 21-5807(a), with K.S.A. 2021 Supp. 21-5807(b). Thus, an instruction on burglary was legally appropriate.

*A burglary instruction was factually appropriate.*

Under "K.S.A. 22-3414(3), a lesser included offense instruction is only required 'where there is some evidence which would reasonably justify a conviction of some lesser included crime.'" *State v. Plummer,* 295 Kan. 156, 161, 283 P.3d 202 (2012). Our consideration of whether "some evidence" is sufficient to sustain the defendant's conviction is "'whether, after review of all the evidence, viewed in the light most favorable to the prosecution, [we are] convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" 295 Kan. at 162.

The State presented evidence that George remained in the house once Carpenter and her daughter returned and entered the house. George may have been the sole occupant while he was filling a bag with groceries from the house, but he failed to leave before Carpenter and her daughter entered the house. And his attempt to exit the house through the back door was stopped by a broken doorknob, leaving him inside the house when Carpenter and her daughter entered the house.

George argues Carpenter's order to stay created the human presence element of aggravated burglary. Yet several events occurred before Carpenter gave the order. First, she and her daughter entered the house. Second, the pair discovered the back door was broken. Third, Carpenter left the premises to retrieve boards to secure the door while her daughter guarded the door. Last, Carpenter returned to the house, entered, and approached the back door. All these events occurred while George continued to hide in the house. George's hiding demonstrates he knew he was not to be in the house. Simply put, Carpenter told George multiple times no one was allowed in the house, and

Carpenter's order for George to stay where he was while her daughter dialed 911 reflects Carpenter did not consent to George's presence in the house at any point.

While George argues that he was merely "caught in the process of a simple burglary," the dispositive facts elevate the crime from burglary to aggravated burglary because he was "caught" by Carpenter inside the house after he had gathered his macaroni and cheese horde. In short, George entered the house without permission and did so with the intent to commit a theft. Put differently, the evidence before the jury included all the elements of burglary with the added element of human presence to support aggravated burglary. Accordingly, the lesser included offense instruction was factually appropriate, and the instruction should have been given. See *State v. Haberlein*, 296 Kan. 195, 204, 290 P.3d 640 (2012).

Last, George contends the State presents legally contradictory arguments in stating we should remand for resentencing if we find insufficient evidence to support George's aggravated burglary conviction and stating the burglary instruction is not factually relevant. Parties may argue in the alternative without the argument being considered legally contradictory or a forfeiture of their primary position. See *State v. Walters*, No. 108,972, 2013 WL 3868066, at *2 (Kan. App. 2013) (unpublished opinion) (considering State's alternative argument). George's argument is unpersuasive as he challenges the State's alternative argument. The State has consistently asserted George committed an aggravated burglary and not a burglary. There is no need to remand for George to be resentenced.

*We observe no clear error.*

Even though a jury instruction for burglary was both legally and factually appropriate, George cannot convince us the jury would have reached a different verdict without the error. Accordingly, he cannot meet his burden to establish clear error. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

Here, George cannot overcome the fact that, after entering the house and packing a bag of groceries that did not belong to him, he was hiding in the house when Carpenter and her daughter entered the house. George asks us to ignore the fact he was caught red-handed in the house with Carpenter and her daughter at the same time. We cannot change the facts. We are not firmly convinced the jury would have found George committed only a simple burglary had the burglary instruction been given. Accordingly, the district court did not commit clear error in failing to provide the burglary instruction.

## George Is Entitled to Jail Credit

### Standard of Review

A defendant's entitlement to jail credit is a statutory right governed by K.S.A. 21-6615(a). See *State v. Theis*, 262 Kan. 4, 7, 936 P.2d 710 (1997). Interpretation and application of the jail credit statute present questions of law over which we exercise unlimited review. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

### Preservation

Although issues generally must be preserved in the district court, we may consider an unpreserved issue for the first time on appeal when a party raises only a question of law and the facts are undisputed, when reaching the merits is necessary to prevent the

10

denial of a fundamental right or to serve the ends of justice, or the district court was right for the wrong reason. *State v. Gutierrez-Fuentes*, 315 Kan. 341, 347, 508 P.3d 378 (2022).

George did not object at sentencing to the district court's decision to deny him 378 days of jail credit. In *State v. Ervin*, 320 Kan. 287, 306, 566 P.3d 481 (2025), our Supreme Court held a defendant could raise a jail credit issue for the first time on appeal because the claim turned on statutory interpretation and undisputed facts regarding the defendant's incarceration. We therefore address George's issue.

*Discussion*

George does not assert that the district court miscounted the time he spent in custody. Instead, he challenges the legal basis for denying the credit despite his incarceration during the pendency of this case. The record reflects the district court awarded 337 days of jail credit in this case, but another 378 days were denied as they were credited to a separate case. The facts are undisputed. Accordingly, George's claim falls within a recognized preservation exception as it presents a legal question of whether K.S.A. 21-6615(a) permits the denial of jail credit under these facts and because George's liberty interests are at stake.

The State counters George is not entitled to duplicate credit as the 378 days were served as a sentence for a separate case. The State contends our Supreme Court's decisions in *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), and *Ervin* created a "gray area" and that neither case controls here. The State argues the May 23, 2024 amendment to K.S.A. 21-6615 applies to any case pending as of that date.

George committed his offense in October 2021, so the version of K.S.A. 21-6615(a) in effect at that time controls. See *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d

11

351 (2022). That version provided, in relevant part, that when a defendant is sentenced to confinement, the district court "shall" compute the sentence to reflect "an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 2021 Supp. 21-6615(a).

For decades, K.S.A. 21-6615 was interpreted to limit jail credit to time spent in custody "solely" on the charge for which the defendant was being sentenced. See *Hopkins*, 317 Kan. at 652 (overturning *State v. Smith*, 309 Kan. 977, 981, 441 P.3d 1041 [2019]; *State v. Harper*, 275 Kan. 888, 890, 69 P.3d 1105 [2003]; and *Campbell v. State*, 223 Kan. 528, 528-31, 575 P.2d 524 [1978]). *Hopkins* changed the prior interpretation and application of K.S.A. 21-6615. Our Supreme Court analyzed K.S.A. 21-6615(a) and concluded the statute's plain language provided a defendant is entitled to "jail time credit for every day the defendant spent incarcerated during the 'disposition of the defendant's case.'" *Hopkins*, 317 Kan. at 656. Our Supreme Court emphasized that "[u]nder the obvious and plain meaning of the words chosen by the Legislature, a defendant shall be awarded jail time credit for *all* time spent in custody pending the disposition of his or her case." 317 Kan. at 657.

This rule was reaffirmed and extended in *Ervin*, in which the defendant was incarcerated on multiple cases and received jail credit in one case but not another. 320 Kan. at 311-12. The *Ervin* court held K.S.A. 21-6615(a) requires credit for all time spent incarcerated pending the disposition of a case, "regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12; see *Hopkins*, 317 Kan. at 657. The *Ervin* court rejected arguments that its interpretation of K.S.A. 21-6615(a) produced absurd results or undermined consecutive sentencing statutes and concluded the unambiguous statutory language was controlling. 320 Kan. at 310. Our Supreme Court recently reaffirmed *Ervin* in *State v. Zongker*, 322 Kan. ___, 586 P.3d 769, 771 (2026). We are duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its

12

previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). Because we observe no indication our Supreme Court intends to depart from its position in *Hopkins* and *Ervin*, we must follow the precedent set forth therein.

The record reflects George did not receive the 378 days of jail credit at sentencing. The district court stated the 378 days were not credited in this case as it was time George served under commitment in a separate case. That rationale is contrary to *Hopkins* and *Ervin.*

In support of the State's argument that the version of K.S.A. 21-6615 in effect at sentencing controls, it cites *State v. King*, 14 Kan. App. 2d 478, 480-81, 793 P.2d 1267 (1990). But we do not find that case controlling because the statute at issue in *King* specifically mentioned it applied to all probation cases when probation was revoked. On May 23, 2024, the Kansas Legislature amended K.S.A. 21-6615. This amended statutory language in K.S.A. 2024 Supp. 21-6615(a)(2)(A) provides jail time credit shall not include "[a]ny time awarded as credit in another case when consecutive sentences are imposed . . . ." The district court sentenced George 25 days after the amendment was enacted, on June 18, 2024. Under *Ervin*, we cannot accept the State's argument.

In *State v. Mitchell*, 66 Kan. App. 2d 196, 579 P.3d 970 (2025), *rev. granted* 321 Kan. 793 (2026), another panel of our court considered this very issue—which version of K.S.A. 21-6615 applies to cases pending sentencing when the May 23, 2024 amendment was enacted. Mitchell pled guilty to six crimes in two cases, with the conduct occurring between January 2023 and August 2023.

Mitchell's May 20, 2024 sentencing hearing was rescheduled and, in the interim, the May 23, 2024 amended statute became effective. At the rescheduled sentencing hearing, the district court applied all jail credit to the first case and denied credit in the

second case. Mitchell appealed, arguing the controlling statute was the version in effect when he committed his offenses.

The *Mitchell* panel determined "the 2024 amendments apply only to sentences for crimes committed on or after May 23, 2024." 66 Kan. App. 2d at 207. It explained that "'the fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.'" 66 Kan. App. 2d at 203. The *Mitchell* panel followed the "rule . . . rooted in practical fairness and [which] is a logical corollary to the principle that 'a person must have notice that certain conduct is illegal before they may be convicted of a crime for engaging in that conduct.'" 66 Kan. App. 2d at 203-04.

The *Mitchell* panel also found K.S.A. 2024 Supp. 21-6615(a) lacked language signaling it should be applied retroactively to cases awaiting sentencing. It vacated the district court's ruling and remanded for a reassessment of jail credit under the earlier statute. 66 Kan. App. 2d at 207-08. We agree with the reasoning in *Mitchell* and apply it here.

Under *Mitchell*, K.S.A. 2021 Supp. 21-6615 applies, given George's offense date was October 12, 2021. Moreover, *Hopkins* and *Ervin* control as the district court sentenced George after *Hopkins* was issued. See *Ervin*, 320 Kan. at 311. Read together, *Ervin*, *Hopkins*, and *Mitchell* establish George is entitled to the jail credit he earned as his offense occurred before May 23, 2024, and the time was served while this case was pending disposition. See *Ervin*, 320 Kan. at 311-12; *Hopkins*, 317 Kan. at 656; *Mitchell*, 66 Kan. App. 2d at 207.

Although neither *Ervin* nor *Mitchell* had been issued when George was sentenced, the district court, under *Hopkins*, was required to award George all jail credit for time he spent incarcerated pending the disposition of this case. See 317 Kan. at 657. Granting such credit was required regardless of whether he received credit in another case. See

14

*Ervin*, 320 Kan. at 311-12. When the district court failed to award George jail credit for time he spent incarcerated, even if the credit was assigned to another case, it erred. Accordingly, we remand to the district court with instructions to award George with the full amount of jail credit the record reflects he is entitled to.

Conviction affirmed, sentence vacated in part, and case remanded with instructions.