NOT DESIGNATED FOR PUBLICATION

No. 128,061

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARMELLE MARIE INEZ STOWERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR, judge. Submitted without oral argument. Opinion filed June 12, 2026. Affirmed.

*Dylan J. Pryor*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

MALONE, J.: Carmelle Marie Inez Stowers appeals her convictions of possession of methamphetamine and possession of marijuana following a jury trial. She claims the State presented insufficient evidence that she knowingly possessed methamphetamine. She also claims the State presented insufficient evidence that the cannabis had a THC concentration greater than 0.3% to support the marijuana charge. After thoroughly reviewing the record, we reject Stowers' claims and affirm the district court's judgment.

1

*Factual and procedural background*

On September 2, 2021, Jackson County Sheriff's Deputy Brentt Donaldson responded to a call to meet with Stowers in the Prairie Band Casino and Resort parking lot because Stowers wanted to discuss her boyfriend's arrest two days earlier in the same parking lot. When Donaldson arrived at the parking lot, he found Stowers sitting in her car. Stowers told Donaldson that her vehicle had been searched at the time her boyfriend was arrested. Donaldson spoke with Stowers for a while and eventually asked to search her vehicle. Donaldson had noticed Stowers acting "very talkative and jittery" with a "disheveled appearance" and bruises up and down her hands, which Donaldson testified were indicators of drug use based on his training and experience. Stowers allowed Donaldson and other officers to search her vehicle and also her purse.

As soon as the vehicle search began, Stowers mentioned to Donaldson that she had found something, which she described as a "powder" in a baggie that had a "Crayola color," in the glove box but did not know where it came from. Donaldson found three syringes at the bottom of a tampon box in Stowers' purse, one of which had a "clear/red liquid residue in it." In the driver's side door panel, the officers found a baggie with a "red substance" inside, which Donaldson interpreted to be the baggie Stowers had mentioned. The search also revealed a "makeshift marijuana pipe" on the center console and a "makeshift smoking apparatus" that appeared to be a bong in the trunk.

On September 17, 2021, the State charged Stowers with one count each of possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. In particular, Count II of the complaint alleged that Stowers possessed "[m]arijuana and/or its active ingredient, Tetrahydrocannabinol, a Schedule 1 drug."

The case proceeded to trial on November 14, 2023. Donaldson testified about his encounter with Stowers and the search of her vehicle and purse. Donaldson's body cam

2

footage showing the search was admitted into evidence. The baggie, syringes, and marijuana pipe were admitted into evidence. Donaldson testified that the pipe had marijuana inside it. He believed based on his training and experience that the bong was used for methamphetamine. Donaldson testified that Stowers told him she lived in the car at the time, that she used marijuana, and that she had used methamphetamine about three months earlier. Donaldson testified that after the search, he had Stowers remove her sweatshirt so he could inspect her arms for injection sites. Stowers did so, revealing marks that Donaldson believed were injection sites. On cross-examination, Donaldson testified that it is not typical to see methamphetamine in a red powdered form.

Jesse Cannon, who worked as an officer with the Prairie Band Tribal Police Department in August 2021, testified next. Cannon testified that on August 31, 2021, two days before Stowers' arrest, he arrested Zachary Nelson, Stowers' boyfriend, at the casino on an outstanding warrant. Stowers was also at the casino that day. After the arrest, Cannon searched their vehicle, which he identified was the same vehicle Donaldson searched two days later. Canon described the search and how he found nothing "of an illegal nature." Cannon conceded the possibility that he missed something while searching but thought it "highly unlikely because of the detailed search conducted." He also searched Stowers' purse that day and found nothing "of an illegal nature."

James Schieferecke Jr., a forensic scientist with the Kansas Bureau of Investigation (KBI), testified last. Schieferecke worked as a forensic scientist with the KBI for over 35 years and estimated that he had analyzed over 29,000 samples of controlled substances. He tested the red substance in the baggie found in Stowers' car, which tested positive for methamphetamine. He agreed it was rare to see red or pink methamphetamine. Schieferecke also tested the marijuana pipe found in Stowers' car and testified that "marijuana was detected in that metal pipe being cannabinol." He also testified his test detected THC in the pipe but did not identify the level of concentration of the THC.

Stowers presented no evidence in her defense. In closing argument, her counsel argued that Stowers knew there was a baggie of red powder in her car but did not know it was methamphetamine. As for the marijuana pipe, counsel suggested that it was in the car when Nelson was arrested two days earlier and overlooked in the initial search. The jury found Stowers guilty as charged. On January 12, 2024, the district court sentenced Stowers to 24 months' imprisonment but granted probation for 18 months supervised by community corrections. Stowers timely appealed the district court's judgment.

*Sufficiency of the evidence to support possession of methamphetamine conviction*

Stowers first claims the State presented insufficient evidence that she knowingly possessed methamphetamine. She renews her argument presented to the jury that although Stowers knew there was a baggie of red powder in her car, she did not know it was methamphetamine, emphasizing the testimony that it is not typical to see the substance in a red powdered form. The State asserts it presented sufficient evidence at trial to support Stowers' conviction for possession of methamphetamine.

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citations omitted.]" *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

K.S.A. 2021 Supp. 21-5111(v) defines possession as "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." Knowledge with regards to possessing a controlled substance generally requires "knowledge of the nature of the controlled substance." *State v. Rizal*, 310 Kan. 199, 208, 445 P.3d 734 (2019). Stowers argues the evidence showed she knew a red substance was in her car, but she did not know that the substance was methamphetamine. She points to

4

Schieferecke's testimony that red or pink methamphetamine was rare and Donaldson's body cam footage showing that she told Donaldson she did not know what the red substance was to support her claim.

But Stowers ignores other evidence. Donaldson testified that, based on his training and experience, Stowers presented indicators of drug use. Donaldson's testimony and his body cam footage showed that Donaldson found three syringes hidden in Stowers's purse inside a tampon box and covered with tampons. One syringe contained a red liquid residue in it. Donaldson found marks on Stowers's arms that he believed were injection sites. Stowers told Donaldson that she had used methamphetamine three months earlier. The red substance in one of the syringes found in Stowers's purse along with the red color of the substance in the baggie support a reasonable inference that Stowers was using the red methamphetamine and therefore knew what it was. That inference is reinforced by the drug use indicators that Donaldson observed and the fact that the syringes were hidden not just in Stowers's purse, but underneath tampons in a tampon box in her purse. And evidence that the vehicle had been searched just a few days earlier supported a reasonable inference that Stowers brought the methamphetamine into the car herself after the earlier search, making it all the more likely she knew the substance was methamphetamine.

Stowers does not challenge any other element of the possession of methamphetamine charge. Considering the evidence in the light most favorable to the State, we conclude there was sufficient evidence to support the conviction.

*Sufficiency of the evidence to support the possession of marijuana conviction*

Stowers next claims there was insufficient evidence to support the possession of marijuana conviction. Stowers argues that the State presented no evidence to show that the substance in the makeshift marijuana pipe contained more than 0.3% THC. She argues that she could have possessed industrial hemp with less than a 0.3% THC

5

concentration on a dry weight basis which falls "outside the scope of the law." The State responds that it had no burden to prove the THC content in the first place. We have stated our standard of review when a defendant challenges the sufficiency of the evidence to support a conviction. See *Mendez*, 319 Kan. at 723.

At the time of Stowers' alleged crimes, the Kansas Uniform Controlled Substances Act defined marijuana as "all parts of all varieties of the plant Cannabis whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin." K.S.A. 2021 Supp. 21-5701(j). The Legislature created exceptions to this definition including "industrial hemp as defined in K.S.A. 2021 Supp. 2-3901, and amendments thereto, when cultivated, produced, possessed or used for activities authorized by the commercial industrial hemp act." K.S.A. 2021 Supp. 65-4101(aa). Industrial hemp is defined as "all parts and varieties of the plant cannabis sativa L., whether growing or not, that contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis." K.S.A. 2021 Supp. 2-3901(b)(7). Based on these statutory definitions, Stowers argues the State failed to prove that the substance Donaldson found in the makeshift pipe was marijuana that is unlawful to possess in Kansas, as opposed to a substance that is lawful to possess in Kansas.

We addressed a similar issue in *State v. Baldwin*, No. 124,442, 2023 WL 5163292 (Kan. App. 2023) (unpublished opinion). The State charged Baldwin with possession of marijuana, for which he was convicted. On appeal, Baldwin argued there was insufficient evidence to support the possession of marijuana conviction because the State did not prove the THC content of the marijuana. Baldwin made a similar argument that Stowers raises here—that the State did not disprove that the substance was actually legal industrial hemp with less than a 0.3% THC concentration on a dry weight basis. The *Baldwin* panel reviewed our court's earlier decision in *State v. Brichat*, No. 91,573, 2005 WL 124169, at *5 (Kan. App. 2005) (unpublished opinion) and found that "while THC is

6

one indicator that a substance is marijuana, it is not the only indicator." *Baldwin*, 2023 WL 5163292, at *4. The *Baldwin* panel concluded that "proof of the presence of THC is not required to meet the statutory definition of marijuana." 2023 WL 5163292, at *4.

Stowers cites *State v. Jones*, No. 126,361, 2024 WL 3381655, at *9 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 865 (2025), for the proposition that the definition of marijuana has limits and therefore she could possess marijuana "outside the scope of the law." But *Jones* actually hurts Stowers' claim because in *Jones* this court followed the earlier *Baldwin* decision to find sufficient evidence that Jones possessed marijuana without a drug tax stamp despite no evidence of the THC content of the marijuana. *Jones*, 2024 WL 3381655, at *8-10.

After Stowers filed her brief in this case, the Kansas Supreme Court issued its opinion in *State v. Brown*, 321 Kan. 1, 17, 573 P.3d 237 (2025), which effectively closes the door on Stowers' claim. Brown was convicted of first-degree felony murder and attempted second-degree murder. On appeal, Brown challenged the felony murder conviction by attacking the validity of his underlying felony conviction of distribution of marijuana. Brown pointed to testimony questioning whether the substance in his possession contained THC. He also claimed the evidence was insufficient to prove the substance he distributed fell under the statutory definition of marijuana rather than one of the listed exceptions. Our Supreme Court rejected Brown's argument. Citing this court's decisions in *Baldwin* and *Brichat* with approval, our Supreme Court determined that "[p]roof of the presence of THC is not required to meet the statutory definition of marijuana." *Brown*, 321 Kan. at 8. Our Supreme Court also determined that "[n]or was the State required to prove that the substance Brown was charged with distributing was *not* one of the listed exceptions to the definition of marijuana." 321 Kan. at 9.

We agree with the State that it had no burden to prove the THC content in order to prove Stowers possessed marijuana. The State was merely required to prove Stowers

7

possessed marijuana as defined in K.S.A. 2021 Supp. 21-5701(j). *Brown*, 321 Kan. at 17. That definition is, "all parts of all varieties of the plant Cannabis whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin." K.S.A. 2021 Supp. 21-5701(j). The State could meet its burden of proof with either direct or circumstantial evidence. See *State v. Barnes*, 320 Kan. 147, 177-78, 563 P.3d 1255 (2025).

Donaldson testified that the search revealed a makeshift marijuana pipe. He believed the residue in the pipe was marijuana "based on [his] experience." Stowers admitted to Donaldson that she used marijuana. Schieferecke testified that he worked as a forensic scientist with the KBI for over 35 years and estimated that he had analyzed over 29,000 samples of controlled substances. Schieferecke agreed that "marijuana was detected in that metal pipe being cannabinol." He also testified that his test detected THC in the pipe but did not identify the level of concentration in the pipe. This evidence is similar, if not stronger, to the evidence in *Baldwin* and could have led a rational jury to find beyond a reasonable doubt that the substance in the pipe was marijuana. Stowers does not challenge any other element on the possession of marijuana charge. We conclude there was sufficient evidence to support the conviction.

Affirmed.